IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID CARSON, ) | |
| ) | |
| Plaintiff, ) | No. 3:12-cv-00850 |
| ) | |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Bryant |
| STATE OF TENNESSEE BUREAU OF ) | |
| TENNCARE, ) | JURY DEMAND |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is a Motion for Summary Judgment ("Motion") filed by Defendant State of Tennessee Bureau of TennCare ("TennCare") (Doc. No. 15), filed with a Memorandum in Support (Doc. No. 16). Plaintiff David Carson filed a Response to Defendant's Motion (Doc. No. 19), to which Defendant filed a Reply (Doc. No. 20). For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED**.

### I. BACKGROUND

A. *Factual History*[1]

Defendant TennCare is a division of the State of Tennessee. (Doc. No. 1 at 1.) Plaintiff first applied for a position in a unit within TennCare in February or March of 2011. (Doc. No. 16 at 1.) This unit (the "Fraud Unit") had been formed in September 2010 in order to investigate fraud within TennCare, in part to ensure that TennCare is not improperly billed for services. (*Id.*) The Fraud Unit was also intended to supplement the efforts of the Tennessee Bureau of Investigation, which pursues criminal investigations and was experiencing a backlog at the time. (*Id.* at 1–2.) Vicky Guye, Audit Director for the Audit and Investigations Division at TennCare,

---
[1] Unless otherwise indicated, the facts in this section are undisputed and taken from Plaintiff's Responses to Defendant's Statement of Undisputed Facts (Doc. No. 19-2).

1

initially filled the manager position for the Fraud Unit by hiring Kerry Dye, a male, in September 2010. In October, 2010 she also hired one female, Daphne Enfinger, and one male, Phillip Earhart, as investigators. (Doc. No. 16 at 2.) Dye left the manager position in January 2011. (*Id.*) Guye then listed the manager position for the Fraud Unit on the website CareerBuilder.com in order to fill Dye's vacancy at some point after the formation of the unit.[2] (Doc. Nos. 19-1 at 1; 16 at 2.) Enfinger was selected[3] to serve as interim manager pending a permanent selection. (Doc. No. 16 at 2.) Guye's job posting stated that the position required applicants to (1) "have a working knowledge of TennCare, medical claims, medical terminology, medical records to support claims, as well as the claims processing systems of TennCare's contractors"; (2) be a graduate of a 4-year college; and (3) have at least five years' professional investigative or auditing experience with supervisory responsibilities. (Doc. Nos. 19-1 at 2–3; 16 at 2–3.) The listing also expressed preference for applicants with a Certified Fraud Examiner (CFE) designation. (*Id.*)

Plaintiff applied for this manager position in February or March 2011. (Doc. No. 16 at 1.) He had previously served as an investigator for the federal government for twenty years, and his work history included a position as a criminal investigator at the Veterans Affairs Hospital in Nashville from 1999–2009. (Doc. No. 19-1 at 2.) Plaintiff is also a CFE. (*Id.* at 3.) Plaintiff first received an interview with Guye for the manager position, which was followed by an interview with both Guye and Gene Grasser, Guye's supervisor. (Doc. No. 16 at 3.) Plaintiff informed Guye during his interview that he had never previously held a "full-time manager's job." (Doc. No. 18-1 at 126.) Plaintiff's resume also does not list any healthcare fraud investigation experience. However, Guye documented in her interview notes that Plaintiff had

---

[2] This job posting is reproduced in Exh. 3 of the Guye Deposition, but the date of the posting is not legible.

[3] The record does not make clear who had the ultimate authority in this hiring decision.

2

"managed staff" previously and had performed "healthcare-related investigations." (Doc. No. 19-5 at 36.)

Enfinger was ultimately hired for the manager position. Defendant alleges that the Fraud Unit was initially intended to be comprised of a manager, two investigators, two Certified Professional Coders ("CPCs"), and three nurses.[4] When the Fraud Unit first began hiring, the three open nurse positions were classified as "civil service" positions. However, due to difficulty finding nurses willing to work under civil service employment, Defendant reclassified the nurse positions as investigators, under the "executive service" designation. (Doc. No. 16 at 2.) At the time Enfinger was hired as manager, the Fraud Unit had also retained two investigators, two people with CFE certificates, and one person with both a CFE and a CPC designation to fill these spots, but no nurses. Engfinger and Guye then sought to fill the four remaining open positions in the Fraud Unit.

Plaintiff requested, and was granted, an interview for one of the remaining open investigator positions. Plaintiff was not hired, and three nurses were hired to fill the positions.

*B. Procedural History*

Plaintiff filed this action against Defendant on August 17, 2012, bringing claims for gender discrimination in violation of Title VII of the Civil Rights Act ("Title VII") and the Tennessee Human Rights Act ("THRA"). (Doc. No. 1 ¶¶ 3–4.) Plaintiff alleges that he was not hired for the Fraud Unit positions of manager and investigator, despite being qualified, and less qualified females were hired instead, due to Defendant's illegal gender preference. (*Id.* at ¶¶ 18–23.)

---

[4] As discussed more fully below, Plaintiff disputes this point, arguing that Defendant offers no contemporaneous documentary proof of this hiring plan. However, Defendant provides support for the statement through the deposition testimony of Enfinger and Guye.

3

On October 11, 2012, Defendant filed a Motion to Dismiss Plaintiff's State Law Claim (Doc. No. 5) which was granted on November 11, 2012 (Doc. No. 10 at 1), dismissing Plaintiff's THRA claims.

Defendant filed its Motion for Summary Judgment (Doc. No. 15) on September 16, 2013, with a Memorandum in Support (Doc. No. 16), a Statement of Undisputed Facts (Doc. No. 17), and seven exhibits (Doc. Nos. 18-1 to 18-7). Plaintiff filed a Response (Doc. No. 19) on October 18, 2013, with a Memorandum in Support (Doc. No. 19-1), a Response to Defendant's Statement of Undisputed Facts (Doc. No. 19-2), and five exhibits (Doc. Nos. 19-3 to 19-7). Defendant filed a Reply (Doc. No. 20) on October 25, 2013, with two exhibits (Doc. Nos. 21-1 to 21-2).

## II. LEGAL STANDARD

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330–31 (6th Cir.

2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). A dispute about a material fact is genuine if a reasonable fact finder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A party asserting or denying that a fact is genuinely disputed may support its position by (1) citing to particular parts of materials in the record, (2) showing that the materials cited by the opposing party do not establish the absence or presence of a genuine dispute, or (3) showing that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the court determines that a reasonable fact finder could not find for the non-moving party, summary judgment must be granted. *See Lexington-South Elkhorn Water Dist.*, 93 F.3d at 233.

### III. ANALYSIS

Defendant moves for summary judgment on all of Plaintiff's remaining claims. Defendant argues that the Court should grant it summary judgment on Plaintiff's gender discrimination claim because Plaintiff was not qualified for the two positions he sought, the employees Defendant hired were qualified, and Defendant thus had a legitimate, nondiscriminatory reason for not hiring him. (Doc. No. 16 at 3–5.) Plaintiff responds that he was, in fact, qualified for both positions, and that the stated reasons Defendant did not hire him—that he was neither a nurse nor a CPC, and lacked direct management experience—is pretext for Defendant's intent to hire exclusively women.

Under Title VII, an employer may not "discriminate against any individual with respect

5

to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2012). To prove gender discrimination under Title VII, a plaintiff must show that his protected status was "a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* § 2000e-2(m). When a plaintiff uses circumstantial or indirect evidence to support a claim of discrimination under Title VII, the claim is governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Corell v. CSX Transp., Inc.*, 378 F. App'x 496, 500–01 (6th Cir. 2010). Plaintiff here relies on circumstantial evidence, primarily Defendant's hiring of several women instead of him, and the analysis is therefore governed by the *McDonnell Douglas* framework.

A. *Prima Facie Showing*

To establish a prima facie case of gender discrimination under *McDonnell Douglas*, a plaintiff must demonstrate that: "(1) [plaintiff] is a member of a protected group; (2) [plaintiff] was subjected to an adverse employment decision; (3) [plaintiff] was qualified for the position; and (4) [plaintiff] was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004). Once the plaintiff satisfies his initial burden to establish a prima facie case, "the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's discharge." *Grace v. USCAR*, 521 F.3d 655, 677 (6th Cir. 2008) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). If the defendant can supply such a reason, the burden of production then returns to the plaintiff to show defendant's reason was pretext for discrimination. *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

6

In ruling on a Motion for Summary Judgment, "a district court considers whether there is a sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

### 1. Manager Position

The only factor in Plaintiff's prima facie showing that is in dispute is whether Plaintiff was qualified for the position of manager. Based on Defendant's decision to interview Plaintiff and Plaintiff's fulfillment of most of the listed qualifications in the Fraud Unit's manager job posting, the Court finds that Plaintiff was qualified to serve as manager. Plaintiff had previously served more than five years as an investigator, graduated from a four-year college,[5] held a CFE designation, and had done healthcare investigation work while employed by the Veteran's Administration. (Doc. No. 19-1 at 3.) Plaintiff's resume does not include any reference to healthcare fraud investigation experience, and despite also submitting to Plaintiff a supplementary twelve-page document that describes in further detail his duties at the VA hospital and other federal agencies, Plaintiff did not mention in any of his application materials in the record that he had any experience with healthcare fraud investigation. (Doc. No. 16 at 3 n.1.) However, in Guye's notes from her interview of Plaintiff, she noted that Plaintiff had performed "healthcare-related investigations." (Doc. No. 19-5 at 36.) Defendant also quibbles with Plaintiff's assertion that he had management experience, arguing that Plaintiff did not include this on his resume. However, Plaintiff's resume does mention experience supervising the work of lower-level criminal investigators. (Doc. No. 19-2 at 42.) Furthermore, Guye's interview notes specifically credit Plaintiff with having "managed" staff previously. (Doc. No.

---

[5] Plaintiff's resume, Doc. No. 18-2 at 2, states that he received a BBA at Austin Peay University in 1981.

19-5 at 36.) In addition, Guye admitted that those who made it to the interview stage for the manager position met the "minimum requirements" for the job. (Doc. No. 19-5 at 11.)[6] Accordingly, while Plaintiff did acknowledge that he "never held a full-time manager's job" (Doc. No. 18-1 at 42), the Court finds sufficient evidence exists that Plaintiff had the requisite management and other experience for the manager position's minimum qualifications.

Therefore, the Court finds that Plaintiff was (1) a member of a protected class; (2) not hired; (3) qualified for the position he sought; and (4) another person, not of the protected class (a female) was hired, and Plaintiff has thus established a prima facie showing of discrimination for failure to hire him as a manager.

### 2. Investigator Position

For similar reasons to those provided above, the Court finds that Plaintiff was qualified for the investigator position. Although Defendant asserts that it intended to hire nurses for the remaining open positions in the Fraud Unit when Plaintiff applied, Defendant nevertheless elected to (1) classify the positions under the generic title of "investigator" (Doc. No. 19-2 at 3); and (2) interview Plaintiff, along with eight other individuals who Enfinger classified as "investigators" rather than "nurses" (of whom five were interviewed) (Doc. No. 19-1 at 5–6). Defendant had a CFE qualification and twenty years' investigation experience. (Doc. No. 18-2 at 2.) However, Defendant ultimately hired four individuals to fill the open slots, all of them women. (*Id.* at 7.) Because Plaintiff was qualified for the position, not hired, and those hired in

---

[6] In order to demonstrate the point that Defendant viewed Plaintiff as "qualified" to be manager (Doc. No. 19-1 at 3,) Plaintiff includes page 28 of Guye's deposition as an exhibit to its Response, in which Guye responds affirmatively to the question whether the nine people who were culled from 300-plus applicants for the manager position met the "minimum requirements." However, this question is rephrased at the end of deposition page 28 as "so all nine of the people who were interviewed met the minimum *qualifications* for the position [...]" (Doc. No. 19-5 at 11) (emphasis added.) Plaintiff does not include page 29 of Guye's deposition, omitting the answer to this follow-up question from the record, and leaving doubt as to whether Guye answered the same way despite the slightly different language.

8

his place were not members of the protected class, the Court finds Plaintiff has shown sufficient evidence to establish a prima facie case of gender discrimination in the hiring of investigators.

### B. Pretext

"If an employee establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Romans v. Mich. Dept. of Human Servs.*, 668 F.3d 826, 838 (6th Cir. 2012). Here, Defendant argues that it had a legitimate, nondiscriminatory reason to (1) not hire Plaintiff for the manager position, and instead hire Enfinger (because Enfinger was better qualified for the position), and (2) not hire Plaintiff for the open investigator positions, and instead hire four women (because Defendant actually sought nurses and coders for those positions). (Doc. No. 16 at 5, 7, 9.) Defendant also argues that Plaintiff has presented no evidence that these reasons were pretextual. (Doc. No. 16 at 7.)

Once a defendant provides a legitimate reason for taking the adverse employment action at issue, the burden returns to the plaintiff to show pretext. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 184 (6th Cir. 2004). "In order to prove pretext . . . the plaintiff must introduce admissible evidence to show that the proffered reason was not the true reason for the employment decision and that discriminatory animus was the true motivation." *Grace*, 521 F.3d at 677–78. Under Sixth Circuit precedent, the plaintiff can show pretext in any of three ways, by showing: "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the decision; or (3) that they were insufficient to motivate the employment decision." *Mitchell*, 389 F.3d at 184. Thus, at this stage of the analysis, the plaintiff "bears the burden of producing evidence to identify a genuine dispute as to whether the employer's

9

proffered reason is pretextual." *Murphy v. Ohio State Univ.*, No. 12-4391, 2013 WL 5878184, at *3 (6th Cir. Oct. 31, 2013).

"Although courts should resist attempting to micromanage the process used by employers in making their employment decisions, neither should they blindly assume that an employer's description of its reasons is honest." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). However, under the "honest belief doctrine," a court evaluating an employer's proffered reason for an adverse employment action should determine "whether the employer made a reasonably informed and considered decision," but does not need to find "that the decisional process used by the employer [was] optimal or that it left no stone unturned." *Id.* "The employer . . . must point to particularized facts upon which it reasonably relied." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 531 (6th Cir. 2012). Thus, employers have a defense against discrimination claims when they demonstrate an honest belief that non-discriminatory reasons exist for not hiring an employee, regardless of whether the reasons were optimal business decisions.

### 1. Manager Position

Defendant alleges that it hired Enfinger, and not Plaintiff, for the manager position because "[b]ased on her resume, Enfinger met the minimum qualifications for the manager position." (Doc. No. 16 at 4.) Additionally, Defendant states that Guye decided to hire Enfinger because "Enfinger had been acting in the role of manager and knew what needed to be done," noting that "she had more management experience, more direct experience with the type of healthcare fraud investigations being done in the unit, and she had also formed good relationships with both the TBI and the AG's office." (Doc. No. 16 at 7.) Defendant's assertions that Enfinger fulfilled the minimum qualifications of the manager job posting—including a four-year degree, a CFE license, and healthcare fraud investigation experience—as well as that

10

Case 3:12-cv-00850   Document 26   Filed 01/15/14   Page 10 of 17 PageID #: 649

Enfinger maintained "good relationships" with the Tennessee Bureau of Investigations and the Attorney General's office, are supported by the record. (*See* Doc. Nos. 18-2 at 26; 18-3 at 19, 27–28.) However, Plaintiff also correctly points out that Enfinger's only healthcare fraud investigation experience, prior to the short-term interim manager position at the Fraud Unit, was a month-long position with the AdvancedMed Corporation from September, 2010 to October, 2010. (Doc. Nos. 19-1 at 4; 18-2 at 26.) Additionally, Enfinger's non-healthcare investigation experience is not nearly as lengthy as Defendant's; specifically, Enfinger had six years of experience compared with Defendant's twenty (Doc. No. 19-1 at 4; *compare* Doc. No. 18-2 at 26 *with* Doc. No. 18-2 at 1–2), and her management experience was in retail sales during college. (Doc. No. 19-1 at 4.) Plaintiff therefore argues that Defendant's stated reasons for hiring Enfinger are pretext for Grasser's ultimate preference of "a young woman he could control to an experienced man he might not be able to control." (*Id.*) Plaintiff's own argument, however, recognizes two differences between Enfinger and Carson as the potential bases for her being more "easily controlled," and thus a more ideal employee by Grasser's standards—gender *and* experience.

Plaintiff's only direct support for this allegation of gender stereotyping is the deposition testimony of Kathryn Havelock, a former non-nurse investigator in the Fraud Unit who had worked for Grasser for ten months (Doc. Nos. 19-2 at 6; 18-4 at 18). (Doc. No. 19-1 at 4.) Havelock acknowledged in her deposition that, in Plaintiff's counsel's words, Grasser, who became involved in the manager hiring after Plaintiff's first interview (Doc. No. 19-5 at 40),[7]

---

[7] Guye states in her deposition that Grasser's "role" at that point was to ask questions at Plaintiff's second interview (Doc. No. 19-5 at 40), but Plaintiff gives no further support for his claim that Grasser was the ultimate decision-maker in the hiring for the manager or investigator positions. Plaintiff's counsel also repeatedly refers to the hiring as "your" decision, and factors "you" considered, presumably referring to Guye, during Guye's deposition. (Doc. No. 19-5 at 46, 48.)

11

would "be more comfortable hiring a young woman than a man with 20-plus years of investigation experience" and that he would "be more comfortable with employees who were easier to bully." (Doc. No. 19-6 at 9.) Havelock also stated that in her opinion, Grasser "found [Enfinger] easier to control than he would have found Mr. Carson." (*Id.*) However, no evidence was presented that Havelock was herself involved in hiring decisions or privy to discussions about hiring. Additionally, Havelock does not offer the opinion that Grasser believed that Enfinger would be easier to control specifically because of Enfinger's gender. While Havelock expressed the belief that Grasser preferred employees he could control in her deposition, she did not decouple Grasser's alleged preference for a less experienced employee from his alleged preference for a female employee. The alternatives Plaintiff's counsel provided to her were either a "man" with "experience" or a "young woman" with "*less* experience". (*Id.*) (emphasis added).) Further, Plaintiff gives no additional evidence indicating that Grasser believed that women, in particular, would be easier to control because of his own gender stereotyping. Even Havelock acknowledged that she "was never aware of any gender discrimination occurring during" her time at the Fraud Unit. (Doc. No. 18-4 at 179.)

Viewing the evidence in the light most favorable to Plaintiff, and accepting Havelock's statements as true, the Court finds there is insufficient evidence for a reasonable jury to conclude that Defendant's stated reasons for its decision was pretext for gender discrimination rather than discrimination against a more experienced potential employee. It is not the Court's responsibility to inquire into the business motives of employers, however unwise or foolish, unless Plaintiff provides sufficient evidence to demonstrate a dispute of material fact as to whether Defendant's stated, non-discriminatory reasons are pretext. *See Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996) ("The law does not require employers to make perfect decisions, nor

12

Case 3:12-cv-00850   Document 26   Filed 01/15/14   Page 12 of 17 PageID #: 651

forbid them from making decisions that others may disagree with.") Here, while Grasser may have been "more comfortable" with a less experienced employee he could control, Plaintiff has not presented evidence that undermines Defendant's honest belief that Enfinger was more qualified because Defendant preferred Enfinger's record of experience and found her work as interim manager satisfactory. Further, even accepting Plaintiff's position that Defendant did not have an honest belief in Enfinger's superiority as a candidate, and may have also been influenced by Grasser's desire for a less experienced candidate, Plaintiff has failed to produce sufficient evidence that this was pretext for illegal discrimination.

Accordingly, the Court finds that Plaintiff has failed to establish a genuine dispute of fact as to whether Defendant's stated reasons for not hiring him as manager are pretext for unlawful discrimination.

### 2. Investigator Position

Plaintiff argues that Defendant's stated reason for not hiring Plaintiff, and instead hiring four females as investigators—that Defendant sought nurses and coders to fill the remaining positions (Doc. No. 19-1 at 6–7)—is pretext for Defendant's gender discrimination. (Doc. No. 19-1 at 11.)

Plaintiff has shown the following facts to support his argument that Defendant's proffered reasons for failing to hire Plaintiff were not what actually motivated it: (1) Defendant has no documentary evidence, contemporaneous with the hiring process, evidencing that it sought nurses and coders; (2) the job posting listed the open positions as "investigator" positions and did not specify a preference for nurses and coders; (3) Defendant concedes that Plaintiff fulfilled the qualifications as they were listed in the job posting; (4) Enfinger's "TennCare Field Investigator Job Plan," created during the search for investigators, detailed a list of "functions that are purely investigatorial [sic] in nature, and that are not within the professional purview of

13

nurses and coders; (5) of the thirteen interviews Defendant conducted, Defendant interviewed Plaintiff, along with eight other non-nurses and non-coders, for the investigator positions; (6) one of the nurses Defendant hired was "not a nurse or a coder for TennCare purposes" because she was an Licensed Practical Nurse (LPN) and not a Registered Nurse (RN)[8]; and (7) Havelock recalls Enfinger referring to her response to the Complaint in this case as "an exercise in creative writing." (Doc. No. 19-1 at 12–15.)

Defendant ultimately hired nurses, and not persons with investigation experience, for the remaining positions, and Plaintiff concludes that "pursuant to the only document contemporaneous with the hiring decisions containing any guidance on the job requirements that Defendant has produced in this litigation, and from which Defendant claims to have culled its candidates, Plaintiff was more qualified than any female who was offered the field investigator job." (Doc. No. 19-1 at 12–13.)

Defendant responds by pointing out that Plaintiff has failed to cite to any support in the record that places the facts presented by Defendant in actual dispute. Plaintiff denies that the Fraud Unit was initially set up to be comprised, at least in part, of nurses and coders. However, the deposition testimony of Enfinger and Guye both establish this intention, and Guye points out that this decision was made because the work of the unit would be primarily reviewing medical records, not "beating the streets" or "turning over witnesses". (Doc. Nos. 18-6 at 7; 19-5 at 8.) Further, Plaintiff contests these points by merely pointing to Defendant's lack of documentary evidence that they wanted to hire nurses and coders. (Doc. No. 19-1 at 5.) In light of the testimony of two witnesses supporting Defendant's statement that it wanted nurses and coders,

---

[8] Guye acknowledged in her deposition that Karen Owens, the LPN in question, would not have been appropriately classified as a nurse for the Fraud Unit because unlike an RN, she was not qualified to review medical records. (Doc. No. 19-5 at 26.)

14

and without some evidence in the record supporting Plaintiff's contention that this is false, Defendant's lack of documentary evidence is, by itself, insufficient to create a genuine issue of material fact. *See Tanner v. Caplin & Drysdale*, 24 F.3d 874, 878 (6th Cir. 1994) (explaining that the moving party can meets its burden of demonstrating lack of genuine issue of material fact by showing absence of evidence to support nonmoving party's case, but the nonmoving party must then set forth "specific facts" showing there is a genuine issue for trial).

Plaintiff's other factual support likewise fails to meet the standard of demonstrating a genuine dispute as to Defendant's proffered explanation for its hiring decision. Defendant states that it wanted to hire nurses for the open positions because of their familiarity with medical records review, and that at the time that Plaintiff applied, Defendant did not yet have any nurses on staff. Demonstrating that there were also investigatory aspects to the job, and that Plaintiff was technically qualified under the public rubric does not undermine Defendant's "honest belief" under *Smith*, 155 F.3d at 807, that nurses, even an LPN and not an RN, would be *more* useful in this position. Indeed, the LPN who was hired had some medical auditing and coding experience. (Doc. Nos. 18-3 at 22; 18-6 at 9–12.) The Court finds that while Plaintiff may have interviewed non-nurses and non-coders, it ultimately decided to hire all nurses and coders for the remaining positions based on an honest belief that these skills were desirable for the position. Additionally, Guye testified that it was Enfinger, and not Grasser, who hired for the investigator positions. (Doc. No. 19-5 at 27.) Plaintiff does not present any evidence indicating that Enfinger was under the control of Grasser's allegedly discriminatory impulses during the investigator hiring, or that Enfinger herself had discriminatory animus.

The evidence raised by Plaintiff is insufficient allow a reasonable finder of fact to determine that Defendant's proffered reasons for not hiring Plaintiff for either the manager or

15

investigator positions—namely, that it preferred Enfinger for the manager job because of her satisfactory performance as interim manager and that it wanted nurses and coders for the investigator jobs—(1) had no basis in fact, (2) did not actually motivate Defendant's actions, or (3) were insufficient to motivate Defendants' actions. The Court notes that while rejection of an employer's stated reasons, when coupled with a plaintiff's prima facie case, can allow a fact-finder to conclude that the real reason was intentional discrimination, the plaintiff's burden remains that of producing "sufficient evidence from which the jury could reasonably reject the defendants' explanation *and infer that the defendants intentionally discriminated against him.*" *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008) (emphasis added). Put differently, "at bottom the question is always whether the employer made up its stated reason *to conceal intentional discrimination.*" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason."))

The Court notes from its review of the evidence that Plaintiff has not put forth any evidence of gender discrimination beyond his prima facie case (*i.e.*, that he was qualified for the positions and that Defendant hired women instead) and his contention that Defendant's stated reasons for not hiring him are pretext. While Plaintiff has put forth sufficient evidence to suggest that he was not hired even though he was qualified, and that perhaps this was due to some animus on the part of Defendant, he has provided no evidence suggesting that this animus was based on his gender rather than some other personal or professional characteristic. Even were the Court to find Defendant did not have an "honest belief" in its proffered reasons, Plaintiff has not shown that Defendant's stated reasons are pretext for *illegal* discrimination.

16

Here, the Court finds that, although neither party has fully developed the record before the court, Plaintiff has failed to establish a dispute of material fact as to whether Defendant's stated reasons for not hiring him are pretextual, and accordingly, Defendant's Motion is **GRANTED**.

IV. **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 15) is **GRANTED**.

It is so ORDERED.

Entered this the 15th day of January, 2014.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT